## HIRAM SWAIN *vs.* JAMES O'LOUGHLIN.

Third Judicial District, New Haven, June Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

While in the employ of the defendant as an iron-worker in the erection of a theater, the plaintiff was directed by *B*, the defendant's general-manager and superintendent who had absolute charge of every detail of the work, to hoist two heavy iron trusses into position some distance above the floor. The selection of the method, materials and appliances to be used in this work, and the direction

of the work itself, required superintendence, without which the plaintiff was not competent. In such matters the plaintiff relied on *B*, who directed him to raise the trusses by means of tackle-blocks fastened to a scantling or pudlock of a scaffolding erected under *B's* supervision for other purposes. In hoisting the second truss, the pudlock, which was insufficient in size and strength to bear the weight of the truss, broke, and the truss fell injuring the plaintiff. *B* was competent to superintend such work, and the defendant supplied him with materials for the construction of suitable appliances. *Held* that under these circumstances the duty of providing suitable appliances was one which rested upon the defendant as master, for negligence in the discharge of which by *B* he was liable to the plaintiff.

Argued June 12th—decided July 30th, 1907.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to and heard in damages by the Superior Court in New Haven County, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $1,990, and appeal by the defendant. *No error.*

*Seymour C. Loomis* and *Edward J. Maher,* for the appellant (defendant).

*Charles S. Hamilton,* for the appellee (plaintiff).

HALL, J. On the 8th of September, 1905, the plaintiff was seriously injured by the falling of an iron truss fifty feet long, and weighing about seven hundred pounds, which was being hoisted to its place in the erection of a paint-bridge in the rear, and about twenty-five feet above the floor, of the stage of a theatre which the defendant was constructing in New Haven for one Poli.

The cause of the fall of the truss was the breaking squarely in two, near its center, of the beam or piece of three-by-four-inch scantling, about eight feet long, called a pudlock, to which the tackle for raising that end of the truss was attached. It broke, not because the wood itself was unsound or defective, but because it was not of sufficient size and strength to sustain the weight of the truss.

The defendant is a large contractor engaged in constructing work in different localities, and very infrequently came to this theatre in the course of its erection. It was built under the supervision of one Brown, who acted as superintendent and general-manager for the defendant in all that was done upon the building. He had absolute authority over every detail of the work, hired and discharged all employees, and acted in the place of the defendant in the erection of the theater. He had large experience in superintending the erection of other large buildings of similar construction and material, and was capable of furnishing and preparing proper means and instrumentalities for hoisting a truss as this truss was required to be hoisted, and of superintending the work.

The plaintiff was an employee of the defendant. He was hired as an iron-worker, and was a competent workman in that capacity. He had no knowledge of woodwork, or carpenter work, nor skill or experience in ascertaining the strength of timbers or in hoisting trusses in the way in which this one was raised. In such matters, in the work upon this theater, he relied upon the statements of Brown, as the latter well knew. The plaintiff had before seen iron trusses hoisted on this building by means of a gin-pole, which Brown had borrowed for that purpose, and he knew no other method. A gin-pole is a suitable and the most usual device for raising trusses like the one in question. It consists of a very long pole or timber, from four to twelve inches through, set upright, and held in place by four guys or stays fastened to its top. To this pole a set of tackle-blocks is lashed by means of which the hoisting is done.

On the day of the accident there was a row of uprights about seventy feet in height, on three sides of the stage of the theater which the defendant was building, and about six inches from the brick walls thereof, extending from the floor to the roof. These uprights were braced with boards running diagonally, and with other boards, called ledger boards, nailed to the uprights horizontally at about every

five feet. At about every five feet, on a perpendicular line, holes were left in the walls into which one end of each pudlock was inserted, the other end resting upon the ledger boards. Upon these pudlocks, planks were placed forming a platform for the masons to use in building the outer walls. This mode of construction continued to the top of the walls, the planking upon the pudlocks being shifted to a higher level as the work of building the walls progressed. Parallel to a portion of said row of uprights and about eight feet distant therefrom was a second one, extending also to the roof, erected for use in connection with the elevator for carring up masons' supplies, and also having braces and ledger boards, and having pudlocks extending from it to said first row. This entire structure was a temporary one, erected under the direction of Brown, and was never designed or intended to be used in hoisting the trusses.

On said day Brown directed the plaintiff and one Oune, also a competent iron-worker, to place the two iron trusses of the paint-bridge on the stage and to hoist them into their places. This work required superintendence in determining the method of raising the trusses, in selecting the materials and appliances with which to raise them, and in directing the work. The plaintiff asked Brown if he had anything to construct a gin-pole of. Brown replied they did not need a gin-pole, and directed them to make fast to one of the pudlocks between said two rows of uprights, saying it was strong enough to bear twice the weight. Relying upon this statement of Brown, the plaintiff and Oune attached a double tackle-block to a pudlock nearly over each end of one of the trusses, and successfully raised it to its place. In attempting to raise the second one in the same manner, the single block at the east end of the truss was attached to it at a point much further from that end of the truss than was the westerly block from the west end of the truss, thus throwing the greater weight of the truss upon the easterly pudlock. This arrangement was due to the fact that the second row .

of uprights did not extend far enough to the east to enable them to attach the tackle as near to the east end of the truss as that near the west end of the truss was attached. In hoisting the truss, in which work the plaintiff and Oune were assisted by Italian laborers, the westerly end was raised into position first. When the east end was nearly raised to its place the pudlock at that end broke and the truss fell, and swinging to one side struck the plaintiff, who was taking the fall of the tackle at the west end of the truss.

Brown saw the first truss after it was raised, and said that the plaintiff and Oune had done well. He was absent thereafter until after the accident, and there was no one present to superintend the work. There were other pudlocks on the stage which could have been used, and had two been used together instead of one alone, they would have withstood the weight of the truss.

Upon these facts the law holds the defendant liable for the plaintiff's injuries, since they wholly fail to show either contributory negligence upon the part of the plaintiff, or the absence of the alleged negligence upon the part of the defendant.

The plaintiff adopted the method of hoisting the trusses which Brown directed him to employ. It is not found as a fact, nor does it appear as a matter of law, that he was negligent in performing the work in the manner he did. It was no part of his duty to furnish a gin-pole or other device for hoisting the trusses, nor to determine whether those furnished were adequate for the purpose. He was not himself competent to decide whether these pudlocks were strong enough to sustain the weight of the trusses. In the absence of any manifest insufficiency or defect in them, he was not negligent in relying upon the statement that they were suitable, made by Brown, who he knew had the direction and decision of such matters, nor was he negligent in not using two pudlocks, instead of only one, after Brown had told him to make fast "to one of them" and that "one of them was strong enough," etc.

The defendant was guilty of negligence. It was his duty

to use reasonable care to furnish suitable instrumentalities for raising the trusses. *McElligott* v. *Randolph*, 61 Conn. 157, 164, 22 Atl. 1094. General Statutes, § 4702. The finding states that those furnished were not suitable for that purpose, and that the defendant ought to have known it, and would have known it by the exercise of reasonable diligence. The furnishing of such insufficient appliances is one of the acts of negligence described in the complaint. The law holds the defendant guilty of such negligence because Brown negligently furnished such unsuitable appliances, and because such act was a default in the performance of a duty imposed upon his employer, the defendant, whom he represented in the work in which he was engaged. General Statutes, § 4702.

Brown was acting as the representative of the employer in providing the plaintiff with the means he did for hoisting the trusses. The finding is that he " acted as superintendent and general-manager for the defendant in all that was done upon the building," and that he "had absolute authority over every detail of the work." The duty violated was peculiarly one belonging to the employer, namely, that of using reasonable care to furnish suitable appliances with which to perform the work, the selection or construction of which appliances was not within the capacity of the workmen who were to use them, but required special knowledge and skill, and in the use of which the superintendence of a person of superior judgment and skill was needed. It is true that the employer, the defendant, entrusted this duty to a competent agent, Brown, and that he supplied him with the means of properly performing it, but this does not exonerate the defendant from responsibility to the plaintiff for the injury he has sustained from Brown's negligent failure to perform the duty which belonged to the employer, as well as to himself as the agent of the employer. *Gilmore* v. *American Tube & Stamping Co.*, 79 Conn. 498, 503, 66 Atl. 4. *Gerrish* v. *New Haven Ice Co.*, 63 Conn. 9, 17, 27 Atl. 235.

The finding contains all the facts proved which are

material to the proper presentation of the questions of law raised by the appeal, and there was no error in refusing to make the corrections asked for.

There is no error.

In this opinion the other judges concurred.